Record/FILE ON DEMAND

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | |
|---|---|
| Nelson L. Bruce, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION LLC, Unknown Does 1-100; et al.<br><br>Defendants. | Case No.: 2:26-cv-00319-BHH-MGB<br><br>**PLAINTIFF NELSON L. BRUCE'S MEMORANDUM IN OPPOSITION TO DEFENDANT TRANS UNION LLC'S MOTION TO DISMISS (ECF No. 22 and 22-1)** |

Plaintiff Nelson L. Bruce respectfully opposes Defendant Trans Union LLC's Motion to Dismiss. The Motion should be denied because Defendant's res judicata theory improperly attempts to expand a limited Magistrate Court judgment beyond its text, the Amended Verified Complaint alleges separate and distinct unauthorized inquiry dates that were not adjudicated in the prior action, and Defendant's remaining arguments either misstate the pleading standard or raise fact-bound issues that cannot be resolved on a Rule 12(b)(6) motion. Plaintiff also respectfully presents that his SCCPC and invasion-of-privacy claims are plausibly pleaded and should not be dismissed at this stage. While Plaintiff proceeds pro se and therefore cannot presently represent absent class members, that issue does not justify dismissing Plaintiff's individual claims or foreclosing the class allegations with prejudice at the pleading stage.

## I.     TRANS UNION'S RES JUDICATA THEORY OVERREACHES THE PRIOR MAGISTRATE COURT JUDGMENT.

Under South Carolina law, res judicata applies only when there is: (1) identity of the parties; (2) identity of the subject matter; and (3) a prior adjudication on the merits by a court of

competent jurisdiction. *Judy v. Judy,* **712 S.E.2d 408 (S.C. 2011)**. Even then, the doctrine bars only claims arising from the same transaction or occurrence that were actually litigated or could have been fully litigated in the prior proceeding. *Pye v. Aycock,* **488 S.E.2d 834 (S.C. Ct. App. 1997)**. Res judicata is an equitable doctrine, but it cannot be stretched to extinguish later-arising or separately occurring wrongful conduct that was never adjudicated.

Trans Union's Motion fails because the present action is not simply a replay of the prior Magistrate Court case. The Amended Verified Complaint alleges multiple unauthorized ChexSystems inquiries on separate dates spanning August 2023 through April 2025. Those later inquiries are distinct operative facts and separate alleged violations. A defendant cannot immunize later misconduct by pointing to an earlier judgment involving a different subset of facts.

## A. The present claims are based on separate inquiry dates and separate operative facts.

Plaintiff's Amended Verified Complaint alleges that Trans Union obtained Plaintiff's ChexSystems consumer report on multiple dates without a permissible purpose, without written consent, and under a false claim that the inquiries were made "on behalf of Credit Karma." Each inquiry is a separate access, separate event, and separate alleged violation of the Fair Credit Reporting Act.

*Separate wrongful acts occurring on different dates do not become one claim merely because they involve the same parties. The present suit concerns a series of later unauthorized inquiries that are distinct from any claim resolved in the prior Magistrate Court action.*

South Carolina courts do not treat every later repeated act as merged into an earlier case simply because the defendant is the same. The relevant question is whether the later claims arise

from the same transaction or occurrence and whether they could truly have been litigated in the earlier forum. The answer here is no, because the present case concerns a continuing series of later access events and later-discovered inquiry dates.

### B. The prior Magistrate Court case did not and could not fully adjudicate the full scope of the claims now asserted.

Trans Union seeks to convert a limited Magistrate Court judgment into a blanket bar against all later claims. That is not how claim preclusion works. A claim is not barred when the first forum could not fully adjudicate the later claim or provide complete relief. See...*Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373 (1985). The prior matter was resolved in Magistrate Court for $7,500 and was tied to the claims then pending in that action. It was not a universal adjudication of every possible ChexSystems inquiry ever made against Plaintiff.

The jurisdictional and practical scope of the earlier case matters. The fact that Plaintiff accepted a limited judgment in a single case does not mean he surrendered all future claims for later separate inquiries. Trans Union's theory would require the Court to ignore the differences in date, conduct, and scope, which res judicata does not allow.

### C. Plaintiff's acceptance language expressly limited the judgment to the claims asserted in that action only.

The strongest answer to Trans Union's preclusion argument is the text itself. Plaintiff's notice of acceptance stated that the $7,500 judgment was accepted "in full satisfaction of the claims asserted in this action only." That limiting phrase is critical. It confirms that the settlement judgment was confined to the particular claims then before the Magistrate Court and was not a global release of every conceivable claim against Trans Union.

The Offer of Judgment itself did not say that Plaintiff was releasing unknown future

claims, later inquiry dates, or separate future violations. It said only that the amount was inclusive of Plaintiff's claims in that action. Plaintiff's acceptance narrowed the scope further by specifying that satisfaction was limited to the claims asserted in that action only. At minimum, that creates ambiguity as to the breadth of the release and the judgment's preclusive effect.

Ambiguity in settlement language cannot be resolved by expanding the release beyond its text. The Court should construe the documents according to their plain words, not Trans Union's after-the-fact interpretation. A Rule 20 offer tied to a single magistrate case is not a magic eraser for later conduct.

*Trans Union cannot turn a limited settlement into a global release that the parties' own words do not support.*

## D. The prior judgment was not a merits adjudication of the present claims.

Trans Union's own Offer of Judgment states that acceptance "<u>**shall not constitute a judgment on the merits**</u>" and "<u>**shall not be admissible as evidence in any trial or hearing**</u>." That language matters. While a consent judgment may have preclusive effect as to the claims actually resolved, it does not transform unlitigated later conduct on separate dates of occurrences into adjudicated facts. See…***Brown v. Felsen*, 442 U.S. 127 (1979).** Although Trans Unions offer of judgment may be a strong indication of a confession, no court actually litigated whether Trans Union had a permissible purpose for each later inquiry date now at issue.

Accordingly, Trans Union's res judicata theory fails because the earlier settlement judgment was textually and practically limited, the present action concerns separate later inquiry dates, and the prior case did not adjudicate the merits of the claims now before this Court.

## II.     TRANS UNION'S ATTEMPT TO EXPAND THE EFFECT OF ITS OFFER

**OF JUDGMENT FAILS AS A MATTER OF TEXT AND CONTRACT PRINCIPLE.**

The Offer of Judgment states that the judgment would be "in total settlement of any and all claims and causes of action by Plaintiff against Trans Union," but that language must be read in context and together with Plaintiff's acceptance. Plaintiff accepted the offer "in full satisfaction of the claims asserted **in this action only**." The Court must give effect to the actual language used by the parties, not Trans Union's preferred rewrite of it.

Under ordinary contract principles, a release or settlement is construed according to its plain language and, where ambiguous, against the drafter. Trans Union drafted the Offer. Plaintiff's acceptance expressly limited the scope. Thus, at minimum, the parties' documents create a fact question as to the scope of the settlement and the preclusive effect of the judgment.

Trans Union's argument that Plaintiff could not "change" the offer by stating the acceptance applied only to the claims in that case ignores that Plaintiff's acceptance did not seek to impose a new bargain; it stated the scope of the satisfaction Plaintiff understood and accepted. The issue is not whether Plaintiff could rewrite the offer. The issue is whether the prior judgment, by its own terms, extinguished later distinct claims. It did not.

The Court should reject any attempt to transform the Magistrate Court judgment into a blanket release for separate later inquiries and later-discovered unauthorized accesses.

## III.    PLAINTIFF'S INDIVIDUAL CLAIMS SHOULD NOT BE DISMISSED BECAUSE OF THE CLASS ALLEGATIONS.

Trans Union is correct that a pro se litigant generally may not represent absent class members. See...*Myers v. Loudoun Cnty. Pub. Schs.*, **418 F.3d 395 (4th Cir. 2005)**; *Oxendine v. Williams*, **509 F.2d 1405 (4th Cir. 1975)**. But that rule does not justify dismissal of Plaintiff's

individual claims, and it does not require dismissal of the class allegations with prejudice at the outset.

The proper course is to preserve Plaintiff's individual claims and allow the class issue to be addressed in a manner that does not prematurely foreclose the case. **Federal Rule of Civil Procedure 23** contemplates later class certification proceedings and the potential appointment of class counsel. **See…Fed. R. Civ. P. 23.**

## A. The class allegations should not be dismissed with prejudice at the pleading stage.

At the pleading stage, the Court should not impose the harshest possible remedy on class allegations that may be cured by counsel appearance or amendment. If the Court concludes Plaintiff cannot presently proceed as class representative pro se, the appropriate remedy is to defer the issue, allow a reasonable period for counsel to appear, and if no counsel appears or can be appointed, to strike the class allegations without prejudice. Dismissal with prejudice would be overbroad and unnecessary.

## B. Plaintiff's individual claims remain fully viable regardless of the class issue.

Even if the class allegations are later narrowed or removed, Plaintiff's individual claims for unauthorized procurement of consumer reports, false pretenses, willful noncompliance, SCCPC violations, and invasion of privacy should proceed. Defendant's attempt to use the class issue as a basis to dismiss the entire action should be rejected.

## IV. PLAINTIFF HAS PRESENTED A PLAUSIBLE FCRA CLAIM UNDER THE BROAD STATUTORY FRAMEWORK, NOT JUST A NARROW § 1681B THEORY.

Trans Union's Motion attempts to confine this case to a narrow technical dispute over one subsection. That is too cramped a reading of the Amended Verified Complaint. The pleading

alleges that Trans Union obtained Plaintiff's ChexSystems reports without a permissible purpose, without written instructions/consent, under false pretenses, and with knowledge of the FCRA's restrictions.

The FCRA prohibits obtaining or using consumer reports without a permissible purpose and imposes civil liability for willful or negligent noncompliance. See...**15 U.S.C. § 1681b, 15 U.S.C. § 1681n, 15 U.S.C. § 1681o**. The complaint alleges repeated unauthorized access dates, the absence of any written authorization, and Credit Karma's denial that it requested ChexSystems reports as part of its services.

Under the pleading standard, Plaintiff need only allege facts making the claim plausible. See...**Fed. R. Civ. P. 8(a)(2),** *Bell Atl. Corp. v. Twombly,* **550 U.S. 544 (2007),** *Ashcroft v. Iqbal,* **556 U.S. 662 (2009).** Plaintiff has done so.

## A. The repeated inquiry dates support a plausible inference of unauthorized access.

The Amended Verified Complaint identifies multiple dates on which Plaintiff's ChexSystems report was obtained. That specificity is enough at the pleading stage. Trans Union's claim that the complaint is insufficient ignores the fact that Plaintiff identifies the dates, the reported source, the alleged lack of instruction/consent, and the alleged false certification route through Credit Karma.

## B. The allegations support willfulness and negligence.

Plaintiff alleges that Trans Union is a sophisticated consumer reporting entity familiar with FCRA compliance requirements, yet it repeatedly obtained consumer report information without proof of written instructions/consent/authorization even when asked directly and given the opportunity to provide evidence of their alleged permissible purpose (**see...Exhibit A**). That

supports a plausible inference willfulness, neglect or at least reckless disregard, if not knowing conduct. See...*Safeco Ins. Co. of Am. v. Burr,* **551 U.S. 47 (2007).** Whether Trans Union can later prove a permissible-purpose defense is a factual issue not suitable for dismissal on the pleadings.

## V.    PLAINTIFF'S § 1681Q AND § 1681A REFERENCES SHOULD BE TREATED AS PART OF THE FCRA LIABILITY THEORY, NOT AS A BASIS TO DISMISS THE CASE.

Trans Union may argue that some of the statutory references in the Amended Verified Complaint do not independently create civil liability. Even if the Court agrees as to any particular citation, that does not warrant dismissal of the complaint as a whole.

The gravamen of the pleading is unauthorized access to Plaintiff's consumer reports and the absence of a permissible purpose. The references to false pretenses and privacy are part of the broader FCRA theory and help explain the willfulness and wrongful nature of the conduct. The Court should not elevate labels over substance where the operative facts sufficiently plead unauthorized procurement of consumer report information.

At most, the Court may construe certain provisions as supporting allegations rather than standalone counts. But that would not justify dismissal of the core FCRA claims.

## VI.    THE SCCPC CLAIM SHOULD NOT BE DISMISSED AT THIS STAGE.

Plaintiff has also asserted claims under the South Carolina Consumer Protection Code. Trans Union's briefing appears to suggest preemption and prior adverse rulings defeat the claim. That is too broad.

The SCCPC claim is based on allegations that sensitive personal identifying information, including Social Security number information, was disclosed and used without written

instruction or consent. Those allegations state a colorable South Carolina statutory privacy claim. Whether the FCRA ultimately preempts some portion of the SCCPC claim is a fact-sensitive issue that should not be resolved against Plaintiff on a bare motion to dismiss unless preemption is clear and unavoidable from the face of the complaint.

Plaintiff respectfully presents that the SCCPC claim is independently viable and should remain in the case.

## VII.    THE INTRUSION-UPON-SECLUSION CLAIM IS PLAUSIBLY PLEADED.

South Carolina recognizes intrusion upon seclusion as an invasion of privacy tort. See... *Snakenberg v. Hartford Cas. Ins. Co.,* **383 S.E.2d 2 (S.C. Ct. App. 1989).** Plaintiff alleges that Trans Union intentionally obtained his private consumer report information without writttne instructions/consent, without a permissible purpose, and under false pretenses. Those allegations describe an intrusion into private financial and identifying information.

This is not merely a generalized grievance. Plaintiff alleges repeated unauthorized accesses to highly sensitive consumer report data. The FCRA itself reflects the privacy character of such information, and the Complaint alleges emotional distress, loss of privacy, and fear of identity misuse resulting from the intrusion.

At the pleading stage, these allegations are sufficient. Defendant's contrary arguments depend on its version of the facts, which cannot be accepted over Plaintiff's allegations on Rule 12(b)(6).

## VIII.    THE AGGRAVATED-IDENTITY-THEFT REFERENCE DOES NOT REQUIRE DISMISSAL OF THE PLAINTIFF'S OTHER CLAIMS.

To the extent the Court concludes that 18 U.S.C. § 1028A does not provide a private civil cause of action, that point does not defeat Plaintiff's other claims. The reference to aggravated

identity theft is part of the factual and damages narrative concerning the misuse of Plaintiff's identifying information. If the Court finds the reference legally inapt as a standalone claim, the proper response is to disregard that label rather than dismiss the otherwise viable FCRA, SCCPC, and privacy claims.

## IX.    AT A MINIMUM, PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND IF THE COURT IDENTIFIES ANY PLEADING DEFICIENCY.

If the Court concludes that any portion of the Amended Verified Complaint is insufficiently pleaded, Plaintiff respectfully requests leave to amend. Leave should be freely granted when justice so requires. See…**Fed. R. Civ. P. 15(a)(2).** Dismissal with prejudice would be especially unwarranted where the complaint identifies specific inquiry dates, the third-party source, the claimed lack of permissible purpose, and the express limitation in Plaintiff's prior acceptance of judgment.

## X.    RES JUDICATA DOES NOT BAR CLAIMS THAT COULD NOT HAVE BEEN FULLY LITIGATED IN THE PRIOR MAGISTRATE COURT ACTION BECAUSE THAT COURT'S JURISDICTION WAS LIMITED TO $7,500.

Defendant's res judicata argument fails for the additional reason that the prior Magistrate Court action was jurisdictionally capped at $7,500, and Plaintiff could not have inserted additional claims or additional damages into that case without exceeding the court's monetary jurisdiction. Res judicata does not bar claims that could not have been fully and fairly litigated in the prior forum. See…Plaintiff's Declaration attached as Exhibit B.

South Carolina courts recognize that claim preclusion applies only where the earlier action involved the same subject matter and a prior adjudication by a court of competent jurisdiction. See…*Judy v. Judy,* **712 S.E.2d 408, 414 (S.C. 2011).** The doctrine also bars only claims that were actually litigated or that could have been litigated in the former suit. See…*Pye*

*v. Aycock,* **488 S.E.2d 834, 836 (S.C. Ct. App. 1997).** But a claim is not barred when the first forum lacked jurisdiction to afford complete relief on the later-asserted claims.

Here, the prior action was brought in Magistrate Court and was limited by that court's monetary jurisdictional ceiling. Plaintiff's claims in that case were already maxed out at the $7,500 jurisdictional amount. Any attempt to add further claims or additional damages would have exceeded the court's authority and placed the action outside the court's jurisdictional limits. Plaintiff was not required to force additional claims into a forum that could not lawfully adjudicate them.

This is especially important because res judicata bars only claims that could have been brought in the prior action in a court competent to hear them. A claim that would have exceeded the prior court's jurisdiction was not a claim that could have been fully litigated there. See…

*Marrese v. American Academy of Orthopaedic Surgeons,* **470 U.S. 373, 382-83 (1985).** South Carolina law likewise does not apply claim preclusion mechanically where doing so would deny a party a full and fair opportunity to present claims that the prior court lacked power to adjudicate.

Accordingly, to the extent Plaintiff's present claims seek relief, damages, or legal theories that would have exceeded the Magistrate Court's jurisdictional amount, those claims were not and could not have been part of the prior action. Defendant therefore cannot rely on res judicata to bar them.

### XI. PLAINTIFF DID NOT WAIVE HIS RIGHT TO CHALLENGE DEFENDANT'S OVERBROAD INTERPRETATION OF THE RULE 20 OFFER OF JUDGMENT, AND PLAINTIFF'S CONDITIONAL ACCEPTANCE DOES NOT TRANSFORM THE PRIOR JUDGMENT INTO A GENERAL RELEASE.

Trans Union argues that Plaintiff waived any challenge to the scope or effect of the Rule 20 Offer of Judgment because Plaintiff first served a proposed stipulated judgment and later accepted the Offer with language limiting the judgment to "the claims asserted in this action only." That argument fails both factually and legally.

First, Plaintiff's December 7, 2025 proposed stipulated judgment was not the final operative judgment in the prior case. It was a conditional counterproposal seeking to clarify that any judgment entered would resolve only the claims then pending in Case No. 2024CV1810306501 and would not operate as a broad release of unrelated or later-arising claims. When a party responds to an offer with limiting language, that response reflects a dispute over scope, not a waiver of the right to contest an overbroad construction later advanced by the opposing party. A proposal that was never adopted by the Court cannot be used to expand the scope of the judgment beyond what was actually entered.

Second, Plaintiff's December 10, 2025 Notice of Acceptance expressly limited acceptance to "the claims asserted in this action only." That language confirms that Plaintiff accepted the monetary amount demanded by Trans Union for the purpose of resolving the then-pending magistrate-court case, but did not agree to a general release of separate claims, separate inquiry dates, or separate transactions. Trans Union's attempt to characterize that limited acceptance as a waiver is contrary to the text of Plaintiff's notice and the text of the Offer itself, which was tied to the specific magistrate-court action and expressly stated that acceptance would not constitute a judgment on the merits or a finding of liability.

Third, waiver requires a knowing and intentional relinquishment of a known right. Nothing in Plaintiff's conditional acceptance or limited notice of acceptance reflects any intention to relinquish the right to challenge future conduct, future inquiries, or the preclusive

Page 12 of 15

effect of the judgment as to claims not actually resolved. To the contrary, Plaintiff expressly reserved those rights by limiting the judgment to the claims asserted in the prior action. A reservation of rights is the opposite of waiver.

Fourth, even if Trans Union contends Plaintiff's limiting language was ineffective to modify the offer, that does not help Defendant. If the limiting language was ineffective to alter the offer, then the prior judgment should be construed according to the actual claims before the Magistrate Court, not as a sweeping release of every conceivable claim against Trans Union. If the language was effective as a limitation, then Defendant's waiver argument fails because Plaintiff expressly preserved the distinction between the resolved claims and all excluded claims. Either way, Trans Union's waiver theory collapses.

Finally, Trans Union's position improperly conflates acceptance of a monetary settlement with surrender of all future rights. Plaintiff accepted a $7,500 judgment in the prior case to resolve that case only. Plaintiff did not admit that Trans Union had authority to access his consumer information on other dates, did not stipulate that all future or separate inquiries were resolved, and did not waive the right to challenge Defendant's expansive reading of the prior judgment in this case.

Accordingly, Trans Union's waiver argument should be rejected. At minimum, the effect of the conditional acceptance, the limited acceptance, and the parties' intent present factual and interpretive issues that cannot be resolved on a Rule 12(b)(6) motion.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Trans Union LLC's Motion to Dismiss in its entirety. In the alternative, Plaintiff requests that the

Court deny dismissal of his individual claims, decline to construe the prior Magistrate Court

judgment as a blanket release of later claims, preserve the SCCPC and invasion-of-privacy

claims, and, if necessary, allow a reasonable opportunity for counsel to appear with respect to the

class allegations or permit amendment rather than dismissal with prejudice.

**Dated this 1ˢᵗ day of May, 2026.**

RESPECTFULLY PRESENTED,

_____

Nelson L. Bruce, Sui Juris
All Secured Natural Rights Explicitly Reserved and Retained "with prejudice"
c/o 144 Pavilion St., Summerville, South Carolina 29483
Phone: 843-437-7901
leonbruce81@yahoo.com