**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Nelson L. Bruce, Plaintiff, v. TransUnion, LLC, and Unknown Does 1-100[1], Defendants. | Case No. 2:26-cv-00319-BHH-MGB **REPORT AND RECOMMENDATION** |

Plaintiff Nelson Bruce ("Plaintiff"), proceeding *pro se*, originally brought this civil action in state court alleging, *inter alia*, violations of the Fair Credit Reporting Act ("FCRA"). (Dkt. Nos. 1-1.) Defendant TransUnion, LLC ("TransUnion") removed the case to federal court on January 29, 2026. (Dkt. No. 1.) This matter is now before the Court upon TransUnion's Motion to Dismiss (Dkt. No. 22). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned **RECOMMENDS** that the Motion to Dismiss (Dkt. No. 22) should be **GRANTED**, and that Plaintiff's claims should be **DISMISSED**.

## RELEVANT BACKGROUND

As noted, Plaintiff, proceeding *pro se*, initially filed this civil action in state court and Defendant TransUnion removed the case to federal court on January 29, 2026. (Dkt. Nos. 1, 1-1.) Plaintiff then filed a Motion to Remand on February 12, 2026. (Dkt. No. 8.) TransUnion responded

1 Although Plaintiff lists "Unknown Does 1-100" as Defendants in his Amended Complaint, the allegations of wrongdoing contained therein appear specific to TransUnion. (*See generally* Dkt. No. 18.)

to Plaintiff's motion on February 26, 2026 (Dkt. No. 12) and simultaneously filed a Motion to Dismiss Plaintiff's Complaint (Dkt. No. 13). On the following day, the Court entered an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to TransUnion's motion. (Dkt. No. 14.) Plaintiff filed a reply to TransUnion's response to his motion on March 5, 2026. (DKt. No. 16.)

On March 19, 2026, the parties filed a Joint Motion to Stay Discovery and All Other Existing Deadlines pending the Court's ruling on TransUnion's Motion to Dismiss. (Dkt. No. 17.) On that same day, Plaintiff filed an Amended Complaint. (Dkt. No. 18.) In light of Plaintiff's Amended Complaint, the Court mooted the pending Motion to Dismiss because it pertained to an outdated pleading and mooted the Joint Motion to Stay because the underlying Motion to Dismiss was no longer pending. (Dkt. No. 19.) Plaintiff's Motion to Remand was similarly dismissed as moot in light of his amended pleading. (Dkt. No. 41.)

On April 2, 2026, Defendant TransUnion filed the instant Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. No. 22.) On the following day, the Court again entered an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to Defendant TransUnion's motion. (Dkt. No. 23.) The parties filed a renewed Joint Motion to Stay Discovery and All Other Existing Deadlines pending the Court's ruling on the Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 25), which the Court granted on April 14, 2026. (Dkt. No. 26.)

Plaintiff declined to respond to TransUnion's Motion to Dismiss his Amended Complaint by the May 4, 2026 deadline and instead filed a Motion for Leave to File his response in opposition "out of time" on May 5, 2026. (Dkt. Nos. 23, 28.) The Court granted Plaintiff's request on May 7,

2026 and docketed Plaintiff's response in opposition and the corresponding exhibits on that same day. (Dkt. Nos. 29, 30.) After requesting and receiving an extension of time to reply, TransUnion replied to Plaintiff's response in opposition on May 21, 2026. (Dkt. Nos. 33, 34, 36.) On June 2, 2026, Plaintiff filed a sur reply. (Dkt. No. 40.) As such, the motion before the Court has been fully briefed and is ripe for disposition.

According to Plaintiff's verified[2] Amended Complaint, he brings claims "for violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681, et seq., . . . Aggravated Identity Theft, Invasion of Privacy, and the Financial Identity Fraud and Identity Act known as the South Carolina Consumer Protection Code (SCCPC), S.C. Code Ann. § 37-20-180 et seq." (Dkt. No. 18 at 1–2.) In light of these purported violations, "Plaintiff and [a] similarly situated proposed class seek[] monetary damages statutory or others in amounts over $31,000,000." (*Id*. at 2.)

More specifically, Plaintiff claims that he accessed his consumer disclosure report from ChexSystems on October 30, 2023, March 3, 2024, and January 12, 2025. (*Id*. at 5.) In doing so, Plaintiff purportedly noticed that TransUnion impermissibly obtained his consumer report "20 times" including on August 6, 2023, September 5, 2023, October 5, 2023, November 5, 2023, December 5, 2023, January 5, 2024, February 5, 2024, March 5, 2024, April 5, 2024, May 5, 2024, June 16, 2024, July 8, 2024, August 7, 2024, September 6, 2024, October 5, 2024, November 5, 2024, December 5, 2024, January 5, 2025, February 5, 2025, March 5, 2025, and April 7, 2025. (*Id*. at 5–6.) Plaintiff further contends that TransUnion also "obtained the similarly situated proposed class ChexSystems reports between January 1, 2023 to present without a permissible

---

[2] "In this Circuit, verified complaints by *pro se* litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge." *Brooks v. Davenport*, No. 9:15-cv-3107-PMD-BM, 2016 WL 11431331, at *1 (D.S.C. Aug. 22, 2016) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)), *adopted*, 2016 WL 6275331 (D.S.C. Oct. 27, 2016).

purpose." (*Id*. at 6.) Plaintiff appears to contend that TransUnion violated 15 U.S.C. § 1681b in doing so. (*Id*. at 5–6.) According to the Amended Complaint, ChexSystems—a "nationwide specialty consumer reporting agency"—certified that TransUnion "obtained Plaintiff's and similarly situated proposed class consumer reports 'on behalf of CreditKarma.'" (*Id*. at 6.) However, Plaintiff contends that TransUnion failed to provide him with proof of CreditKarma's written consent when he requested it. (*Id*. at 6–7.) According to Plaintiff, the nature of CreditKarma's business indicates that it would not have a legitimate business need to access the consumer reports at issue. (*Id*. at 7–8.) As such, Plaintiff claims that "any report allegedly obtained on their behalf is unauthorized and without the written instructions of the plaintiff and the similarly situated proposed class, the consumers." (*Id*.)

Plaintiff also appears to allege that TransUnion's alleged conduct in accessing ChexSystem reports on behalf of CreditKarma violated 15 U.S.C. § 1681b "and[/]or if applicable South Carolina law and[/]or other state laws" because TransUnion "is required to make a reasonable effort to verify the uses certified by [a] prospective user prior to furnishing [] a consumer report." (*Id*. at 9.) Further, because TransUnion "is familiar with the requirements of the FCRA," Plaintiff contends that its alleged FCRA violations were necessarily "willful, negligent, and reckless." (*Id*. at 8.)

Ultimately, Plaintiff claims that TransUnion requested the consumer reports "under false pretenses, in violation of 15 U.S.C. § 1681q as CreditKarma has not provided any evidence that supports they gave Trans Union the authority to request [the consumer reports] on their behalf nor have CreditKarma produced any written agreements [indicating TransUnion had authority to access the reports]." (*Id*. at 9–11.) According to Plaintiff, TransUnion's conduct constitutes an invasion of privacy under the FCRA and South Carolina state law, and aggravated identity theft

pursuant to 18 U.S.C. § 1028A. (*Id*. at 11–12.) Plaintiff claims that he and the "similarly situated proposed class" suffered harm due to TransUnion's conduct, including "emotional distress, concerns over identity theft, and unauthorized persons in possession of their personal private sensitive information . . . ." (*Id*. at 12.) Based on the foregoing, the Amended Complaint brings claims for violations of 15 U.S.C. §§ 1681b, 1681q, 1681(a)(4), and 1681n; knowing, willful, and negligent violations of S.C. Code Ann. § 37-20-180(6); and violations of South Carolina common law. (*Id*. at 12–18.)

## LEGAL STANDARDS

### I. Liberal Construction of *Pro Se* Complaint

Because Plaintiff is proceeding *pro se*, this Court is required to liberally construe his filings, which are held to a less stringent standard than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions"). Further, a court may not construct a plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### II. Motion to Dismiss

Defendant TransUnion argues that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Under Rule 12(b)(6), a party may move to dismiss an

action when a complaint fails "to state a claim upon which relief can be granted." Because a Rule 12(b)(6) motion tests only the "legal sufficiency" of the complaint, a court's analysis is typically limited to determining whether the complaint satisfies the minimal pleading standard under Rule 8. *See Doe 202a v. Cannon*, No. 2:16-cv-00530-RMG, 2018 WL 317818, at *1 (D.S.C. Jan. 8, 2018). Specifically, Rule 8(a)(2) states that the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Although Rule 8 does not require "detailed factual allegations" to survive a motion to dismiss, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" for purposes of satisfying the federal pleading standard. *See id.* (referencing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must contain sufficient factual matter to state a claim to relief that is "plausible on its face," such that the allegations allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See id.* (referencing *Twombly*, 550 U.S. at 556). Thus, while a court must take all factual allegations in a complaint as true in reviewing a Rule 12(b)(6) motion to dismiss, it "need not assume the veracity of bare legal conclusions." *See Balas v. Reveley*, 734 F. App'x 201, 202 (4th Cir. 2018) (referencing *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012)); *Twombly*, 550 U.S. at 555 (explaining that the court is "not bound to accept as true a legal conclusion couched as a factual allegation").

## DISCUSSION

TransUnion argues that Plaintiff's Amended Complaint should be dismissed in full because: (1) Plaintiff's claims are barred by the doctrine of *res judicata*; (2) Plaintiff is barred from pursuing claims on behalf of a class; and (3) Plaintiff's claims are not cognizable and/or are

inadequately pled. (Dkt. No. 22-1 at 1.) For the reasons set forth in greater detail below, the undersigned agrees and therefore **RECOMMENDS** that TransUnion's motion (Dkt. No. 22) should be **GRANTED**.

## I. Res Judicata

As noted, TransUnion first argues that Plaintiff's claims must be dismissed because they are barred by the doctrine of *res judicata*. (*See generally* Dkt. No. 22-1.) The undersigned considers this argument, below.

*Res judicata* may be a basis for dismissal under Federal Rule of Civil Procedure 12(b)(6). *See Toney v. LaSalle Bank Nat'l Ass'n*, 896 F. Supp. 2d 455, 464 (D.S.C. 2012) ("[*R*]*es judicata* or claim preclusion challenge is to be considered pursuant to Rule 12(b)(6).") (citing *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 720 (4th Cir. 2006)). Here, TransUnion argues that Plaintiff's claims are barred because they were disposed of in a previous state court lawsuit. (Dkt. No. 22-1 at 1–4, 5–7.) More specifically, TransUnion explains that Plaintiff's claims are precluded by a final judgment entered in a previous lawsuit he filed in the Magistrate Court of Dorchester County ("Case No. 2024CV1810306501" or Case No. -6501").[3] (*Id.* at 1.) In that lawsuit, Plaintiff alleged that TransUnion violated the FCRA and various state laws by allegedly obtaining his consumer report from ChexSystems. (*See generally* Dkt. No. 22-2.) Plaintiff attached to his complaint in

---

3 A federal court may take judicial notice of the contents of its own records, as well as those records of other courts. *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970). Thus, the undersigned takes judicial notice of the records filed in the underlying proceeding before the Magistrate Court of Dorchester County. *See* Dorchester County First Judicial District Public Index, https://publicindex.sccourts.org/Dorchester/PublicIndex/ (limiting search to Nelson Bruce, Case Number 2024CV1810306501) (last visited Oct. 6, 2026). Further, although the Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefings, the Court may also consider facts and documents subject to judicial notice without converting the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 10(c), 12(b)(6), 12(d); *see also Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). In sum, the undersigned has only considered extraneous documents to the extent they are attached to, incorporated into, and/or integral to Plaintiff's Amended Complaint, and/or are records of which the Court may properly take judicial notice.

Case No. -6501 a copy of his October 20, 2023 consumer report from ChexSystems, which purportedly showed inquires made by TransUnion on behalf of CreditKarma at various points throughout 2023. (Dkt. No. 22-1 at 2, referencing Dkt. No. 22-2.) According to TransUnion, Plaintiff referenced "19 total inquires" by TransUnion of which he aware during December 2025 settlement negotiations in Case No. -6501. (Dkt. No. 22-1 at 2; *see also* Dkt. No. 22-2 at 28.)

After settlement negotiations proved unsuccessful, TransUnion served an Offer of Judgment on Plaintiff in the amount of $7,500.00 pursuant to South Carolina Magistrate Court Rule 20. (Dkt. No. 22-2 at 32–33.) The Offer of Judgment stated that it was "to be in total settlement of any and all claims and causes of action by Plaintiff against Trans Union . . . ." (*Id*. at 32.) The record indicates that Plaintiff responded with a "conditional acceptance counteroffer that accepted the amount but limited scope to the pleaded inquiry and date only," which he subsequently abandoned. (*Id*. at 45–50.) Plaintiff expressly accepted TransUnion's initial December 5, 2025 Offer of Judgment on December 10, 2025 and so informed the Magistrate Court. (*Id*. at 45–46.). The Magistrate Court entered judgment in favor of Plaintiff in the amount of $7,500.00 on December 22, 2025 (the "Judgement"). (*Id*. at 53.) The Judgment reads:

> This matter came before the Court upon Plaintiff's Notice of Acceptance of Defendant's Offer of Judgment. It is hereby ORDERED AND ADJUDGED that pursuant to South Carolina Magistrate Court Rule 20, Judgment is granted in favor of Plaintiff. Plaintiff shall recover from Trans Union, LLC, the sum of Seven Thousand Five Hundred dollars ($7,500.00).
>
> The Judgment shall be considered as "satisfied" upon Defendant's filing with this Court proof of delivery of the $7,500.00 sum to Plaintiff. . . .

(*Id*. at 53.)

TransUnion filed a Notice of Satisfaction of Judgment with the Magistrate Court on February 24, 2026, informing the court that it had issued payment to Plaintiff in full satisfaction of the judgment on January 23, 2026. (*Id*. at 55–56.) The case was closed.

Plaintiff then filed this civil action in the Magistrate Court of Dorchester County on October 30, 2025, "with a virtually identical Complaint to the one filed in the 2024 Case, again asserting the same causes of action." (Dkt. No. 22-1 at 4; *see also* Dkt. No. 1-1.) TransUnion now asserts that the instant litigation should be dismissed because Plaintiff's claims in this civil action were disposed of by the Judgment entered on TransUnion's Offer of Judgment in Case No. -6501. (Dkt. No. 22-1 at 5.)

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *Allen v. McCurry*, 449 U.S. 90, 96 (1980). South Carolina law applies in determining whether this action is barred by the earlier state action. *See Timpson v. Pondexter*, No. 5:17-cv-00760-PMD-KDW, 2017 WL 6280871, at *2 (D.S.C. Nov. 15, 2017) ("Because Defendants' *res judicata* defense is based [on] a South Carolina state court judgment, South Carolina law relative to *res judicata* is cited."), *adopted*, 2017 WL 6270604 (D.S.C. Dec. 7, 2017); *Weston v. Margaret J. Weston Med. Ctr.*, 2007 WL 2750216, at *1 (D.S.C. 2007).

"To establish the defense of *res judicata* three elements must be shown: (1) identity of the parties or their privies; (2) identity of the subject matter of the litigation; and (3) a final determination on the merits of the claim in the former proceeding." *H.G. Hall Constr. Co. v. J.E.P. Enters.*, 321 S.E.2d 267, 271 (S.C. Ct. App. 1984); *see also Catawba Indian Nation v. State*, 756 S.E.2d 900, 907 (S.C. 2014) (explaining that the doctrine of *res judicata* will bar a claim when

"(1) the identities of the parties [or their privies] are the same as in the prior litigation, (2) the subject matter is the same as in the prior litigation, and (3) there was a prior adjudication of the issue by a court of competent jurisdiction"). South Carolina courts hold that the doctrine of *res judicata* applies to issues adjudicated in the prior suit and issues which could have been raised. *Hilton Head Center of S.C. v. Public Service Comm'n*, 362 S.E.2d 176, 177 (S.C. 1987). Privity "means one so identified in interest with another that he represents the same legal right. One in privity is one whose legal interests were litigated in the former proceeding." *Richburg v. Baughman*, 351 S.E.2d 164, 166 (S.C. 1986). Claims are based on the same cause of action if they "arise[] out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Laurel Sand & Gravel. Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008) (internal citations and quotations omitted). "*Res judicata* . . . bars subsequent actions by the same parties when the claims arise out of the same transaction or occurrence that was the subject of a prior action between those parties." *Riedman Corp. v. Greenville Steel Structures, Inc.*, 419 S.E.2d 217, 218 (S.C. 1992).

The Fourth Circuit Court of Appeals has held that "[g]enerally, claims are part of the same cause of action when they arise out of the same transaction or series of transactions . . . or the same core of operative facts." *In re Varat Enters., Inc.*, 81 F.3d 1310, 1316 (4th Cir. 1996) (internal citations omitted). By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, "[*r*]*es judicata* . . . encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (quoting *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

At the outset, it is undisputed that Plaintiff and TransUnion were parties in the previous state court litigation, Case No. -6501. (*See generally* Dkt. Nos. 22-1, 30, 36.) Further, review of the initial complaint and Amended Complaint makes clear that the claims at issue in this civil action arise out of the same series of transactions and occurrences—or, at the very least, the same core of operative facts—that were the subject of Case No. -6501. (*See* Dkt. Nos. 1-1, 18); *see also Laurel Sand & Gravel. Inc.*, 519 F.3d at 162; *In re Varat Enters., Inc.*, 81 F.3d at 1316; *Riedman Corp.*, 419 S.E.2d at 218. The undersigned finds Plaintiff's arguments to the contrary unconvincing, particularly in light of the fact that he originally filed the instant civil action on October 30, 2025, nearly two months before the Judgement was entered in Case No. -6501. (*See generally* Dkt. No. 1-1.) As such, Plaintiff was aware of the claims brought in this lawsuit before he agreed to the Offer of Judgment in Case No. -6501, and he cannot now claim otherwise. *See Snell v. Mayor and City Council of Havre de Grace,* 837 F.2d 173, 176 (4th Cir. 1988) ("[S]o long as the subject matter of the two suits is substantially the same, a plaintiff cannot avoid the bar of *res judicata* simply by changing the theory of recovery or seeking a different remedy.").

However, the undersigned must agree with Plaintiff's contention that *res judicata* does not bar the claims he asserts in the instant litigation because the Magistrate Court's Judgement did not serve as a final judgment of such claims on their merits. (Dkt. No. 30 at 4.) Indeed, TransUnion's Offer of Judgment specifically stated that "acceptance of this Offer by Plaintiff shall not constitute a judgment on the merits of the claims against Trans Union . . . ." (*See* Dkt. No. 22-2 at 32.) Accordingly, the claims raised in the Amended Complaint are not barred by *res judicata* and cannot be dismissed on that basis.

Nonetheless, the undersigned recommends that the Amended Complaint must be dismissed for the reasons set forth in Section II and III, below.

## II. Pro Se Litigant Cannot Bring a Class Action

Turning to TransUnion's next argument, the undersigned agrees that Plaintiff's Amended Complaint is subject to dismissal because Plaintiff, as a *pro se* litigant, may not bring claims on behalf of other persons. The Amended Complaint makes clear that Plaintiff brings his claims on behalf of himself and a "similarly situated proposed class." (*See generally* Dkt. No. 18.) However, a *pro se* plaintiff may litigate only his own personal claims. Indeed, 28 U.S.C. § 1654 provides that: "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." While the statute allows individuals to "plead and conduct their own cases personally," the statute does not extend the right of self-representation to directing litigation on behalf of others. *See Myers v. Loudon Co. Pub. Sch.*, 418 F.3d 395, 401 (4th Cir. 2005) ("The right to litigate for oneself, however, does not create a coordinate right to litigate for others."). Rule 11(a) of the Federal Rules of Civil Procedure requires that "[e]very pleading . . . must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented." Fed. R. Civ. P. 11. Thus, Plaintiff may not bring the instant "class action," and his case should be dismissed. *See Hummer v. Dalton*, 657 F.2d 621, 623–626 (4th Cir. 1981) (a *pro se* plaintiff's lawsuit is "confined to redress for violation of his own personal rights"); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (a *pro se* plaintiff may not represent others in a class action); *Neal v. ORS*, Case No. 6:12-cv-1995-TMC-KFM, 2012 WL 3765175, *2 (D.S.C. July 26, 2012) (explaining that a *pro se* plaintiff "lacks standing to litigate other persons' legal rights" and that "this court is not permitted to certify a class action where a *pro se* litigant will act as the representative of that class"), *adopted*, 2012 WL 3639721 (D.S.C., Aug. 23, 2012), *aff'd*, 509 F. App'x 280 (4th Cir.), *cert. denied*, 571 U.S. 942 (2013).

**III. Incognizable, Pre-empted, and Insufficiently Pled Claims**

What is more, the FCRA claims underlying this civil action are insufficiently pled. (*See generally* Dkt. No. 18.) With respect to § 1681b, the Amended Complaint alleges, in relevant part, that TransUnion impermissibly obtained his consumer report from ChexSystems "20 times" throughout 2023, 2024, and 2025. (*Id.*) According to the Amended Complaint, TransUnion obtained the report from ChexSystems on behalf of CreditKarma but failed to provide proof of CreditKarma's written consent asking that TransUnion access the report. (*Id.*) Plaintiff further claims that CreditKarma did not have a legitimate business need for the report. (*Id.*) As such, Plaintiff claims that "any report allegedly obtained on their behalf is unauthorized and without [] written instructions," and that TransUnion failed to make the required "reasonable effort to verify the uses certified by [a] prospective user prior to furnishing [] a consumer report." (*Id.*)

The undersigned finds these allegations insufficient to state a plausible claim for relief under § 1681b. Indeed, "there are multiple [] permissible reasons for a consumer reporting agency to furnish a consumer report." *Harper v. Trans Union, LLC*, No. CV DKC 24-230, 2025 WL 1928021, at *3 (D. Md. July 14, 2025) (referencing § 1681b(a)(3)). Here, Plaintiff discusses only two of the "permitted purposes" under which TransUnion could have lawfully accessed his consumer reports. (*See generally* Dkt. No. 18.) Thus, even taking all of Plaintiff's allegations as true, such allegations do not show that TransUnion necessarily accessed or furnished his report under an unpermitted circumstance, as § 1681b provides various other circumstances under which TransUnion would have been permissibly permitted to access his consumer report in accordance with the FCRA. *See* 15 U.S.C. § 1681b(a); *see also Grajales v. Experian Info. Sols., Inc.*, No. 1:25-cv-851, 2026 WL 2936645, at *3 (M.D.N.C. Sept. 30, 2026) ("Alleging an inquiry occurred without authorization says nothing about whether it fell within a permissible purpose under §

1681b(a)(3)").[4] What is more, Plaintiff's allegations that CreditKarma did not have a legitimate business need for his consumer report and that TransUnion failed to make the required "reasonable effort to verify the uses certified by [a] prospective user prior to furnishing [] a consumer report," are conclusory, unadorned allegations that appear to be based on Plaintiff's own beliefs. (*Id.*) The allegations set forth in the Amended Complaint are therefore insufficient to establish a reasonable inference of liability under § 1681b. *See, e.g.*, *Campbell v. Experian Info. Sols., Inc.*, No. 3:24-cv-5772-JFA-SVH, 2024 WL 5498104, at *3 (D.S.C. Dec. 30, 2024) ("Plaintiff's FCRA claims should be dismissed because he merely recites the elements of these claims without providing any facts to support those elements."); *Green v. TransUnion*, No. 2:22-cv-01546-RMG-MHC, 2023 WL 11941017, at *4 (D.S.C. Mar. 30, 2023) (finding FCRA claim should be dismissed where complaint "simply recites elements of potential causes of action under the FCRA but provides no factual and contextual information about [] alleged violation"), *adopted*, 2023 WL 11941016 (D.S.C. Apr. 20, 2023); *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 895 (D.S.C. 2016) ("By its plain language, Section 1681b does not require that a user of credit reports like the defendant have a consumer's 'permission' to access his credit report."); *Gibbons v. GC Servs.*, LLC, No. 13-cv-00084-BO, 2013 WL 5371620, at *2 (E.D.N.C. Sept. 24, 2013) (dismissing complaint which alleged that defendant "intruded into plaintiff's privacy" by obtaining a copy of his credit report despite the supposed fact that the plaintiff had no "prior business dealings or accounts with defendant"); *Bos. v. Collection Co. of Am.*, No. 12-cv-603-MU, 2013 WL 170401, at *3 (W.D.N.C. Jan. 16, 2013), *aff'd*, 538 F. App'x 243 (4th Cir. 2013) (dismissing Plaintiffs complaint under § 1681b because it provided "only conclusory statements that Defendant violated the FCRA by

---

[4] Notably, the Amended Complaint is devoid of factual allegations raising a plausible inference that TransUnion had no "reason to believe" it was accessing his consumer reports for a permissible purpose, which also forecloses Plaintiff's § 1681b claims. *See* 15 U.S.C. § 1681b(a)(3).

obtaining Plaintiff's consumer report without a permissible purpose"); *Harper*, 2025 WL 1928021, at *3 (granting defendant's motion for judgment on the pleadings as to § 1681b because plaintiff alleged only that defendant furnished consumer report without his written consent and noting that there are multiple other permissible reasons to furnish a consumer report); *Grajales*, 2026 WL 2936645, at *2 (noting "the text of the statute makes clear, § 1681b does not require consumers' 'permission' to access their credit report if it is used for a variety of circumstances").

Further, Plaintiff attempts to bring a cause of action under § 1681q, which states that "any person who knowingly and willfully obtains information on a consumer from a [CRA] under false pretenses shall be" fined or imprisoned. 15 U.S.C. § 1681q. However, this is a criminal provision of the FCRA under which Plaintiff, as a private citizen, is not entitled to bring a cause of action.[5] *See, e.g.*, *Alston v. Freedom Plus/Cross River*, No. CV TDC-17-0033, 2018 WL 770384, at *7 (D. Md. Feb. 7, 2018) (noting 15 U.S.C. § 1681q is a "criminal provision of the FCRA"); *Vecchione v. Pro. Recovery Consultants, Inc.*, No. 1:13-cv-584, 2014 WL 6972397, at *4 (M.D.N.C. Dec. 9, 2014) (noting that 15 U.S.C. § 1681q "imposes criminal liability, rather than civil liability"); *Brett v. Blume*, No. 3:19-cv-1134-JFA-SVH, 2019 WL 2178321, at *2 (D.S.C. Apr. 19, 2019) (noting that criminal statutes that provide criminal penalties do not give rise to civil liabilities), *adopted*, 2019 WL 2177318 (D.S.C. May 20, 2019).[6]

---

[5] The undersigned notes that, although § 1681q was used by courts to impose civil liability for improperly obtaining or using credit reports prior to 1997, Congress has since added § 1681b(f), rendering the use of § 1681q to impose civil liability for using and obtaining a credit report without a permissible purpose inappropriate. *See Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 900 n.3 (4th Cir. 2003) (referencing *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 971–72 (4th Cir. 1987); Consumer Credit Reporting Reform Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–426, –433 (Sept. 30, 1996)). Thus, Plaintiff's attempted § 1681q claim could alternatively be dismissed as duplicative of his attempted claims under § 1681b.

[6] Though he does not actually bring a cause of action under 18 U.S.C. § 1028A, Plaintiff references this statute throughout his Amended Complaint. (*See generally* Dkt. No. 18.) In an abundance of caution, the undersigned notes that 18 U.S.C. § 1028A is also a criminal statute that does not give rise to a civil claim, and any attempted cause of action under 18 U.S.C. § 1028A would fail for this reason.

Similarly, Plaintiff attempts to bring a claim under § 1681(a)(4), which details Congress' finding that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. 15 U.S.C. § 1681(a)(4). However, as TransUnion correctly notes, congressional findings and aspirational language do not create a civil cause of action. (Dkt. No. 22-1 at 11); *see also Young v. Experian Infor. Sols., Inc.*, No. 22-cv-1057-TDC, 2022 WL 16540838, at *4 (D. Md Oct. 28, 2022) (stating that § 1681(a)(4) "falls within the part of the FCRA identifying 'Congressional findings and statement of purpose' and thus does not provide a basis for specific cause of action").

As for Plaintiff's attempted claims under § 1681n, this provision creates liability only for a failure to comply with a requirement imposed by the FCRA. *See* 15 U.S.C. § 1681n. Because Plaintiff has not plausibly alleged a violation of a separate provision of the FCRA, Plaintiff has similarly failed to plausibly allege that any such violation was willful or negligent. *See Grajales*, 2026 WL 2936645, at *4 ("Because Plaintiff has not plausibly alleged a violation of § 1681b, § 1681e(b), or § 1681i(a), the court need not reach whether any such violation was willful or negligent.").

In addition, Plaintiff attempts to bring state law claims that appear to be pre-empted. (*See generally* Dkt. No. 18.) Specifically, Plaintiff's second cause of action alleges "knowing, willful, and negligent violations of the SCCPC." (*Id.* at 14.) However, this Court has previously determined that such claims are pre-empted by the FCRA. *See*, *e.g.*, *Bruce v. Bank of Am., N.A.*, No. 2:19-cv-03456-BHH-KDW, 2020 WL 7249876, at *4 (D.S.C. Oct. 22, 2020) (finding FRCA preempts any SCCPC claim; "because Plaintiff is attempting to secure a remedy under the SCCPC for alleged inaccurate credit reporting and purported failure to investigate an inaccuracy on his

credit report and correct it, his sole remedy would be under the FCRA"), *adopted*, 2020 WL 6737647 (D.S.C. Nov. 17, 2020), *appeal dismissed*, 841 F. App'x 578 (4th Cir. 2021).

As for Plaintiff's fourth cause of action, alleging violation of "South Carolina common law invasion of privacy torts for intrusion upon seclusion," this claim is likely pre-empted as well. *See Joiner v. Revco Disc. Drug Ctrs., Inc.*, 467 F. Supp. 2d 508, 512 (holding the FCRA preempts state common law claims). Indeed, Plaintiff has failed to sufficiently allege that TransUnion acted with malice or willful intent to injure Plaintiff. *See* 15 U.S.C. § 1681h(e) ("[N]o consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of information . . . except as to false information furnished with malice or willful intent to injure such consumer."); *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010) ("The only exception to this bar is a narrow one, requiring proof of 'malice or willful intent to injure [the] consumer.'"). Under South Carolina law, "'[m]alice' is established only if 'the defendant acted with ill will toward the plaintiff or acted recklessly or wantonly, meaning with conscious indifference toward the plaintiff's rights.'" *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585 (4th Cir. 2003) (citing *Murray v. Holnam, Inc.*, 542 S.E.2d 743, 750 (S.C. 2001)). In the Amended Complaint, Plaintiff provides nothing more than conclusory assertions to support his claim that TransUnion acted with malice or willful disregard, (*see generally* Dkt. No. 18), and such conclusory assertions are insufficient to sustain his claims. *See Balas*, 734 F. App'x at 202 (4th Cir. 2018) (noting that a court "need not assume the veracity of bare legal conclusions"); *Twombly*, 550 U.S. at 555 (explaining that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"); *see also Beaudett*, 775 F.2d at 1278 (explaining that federal courts are not required to serve as "mind readers" or advocates for *pro se* litigants when construing *pro se* pleadings).

The undersigned therefore **RECOMMENDS** that TransUnion's Motion to Dismiss (Dkt. No. 22) should be **GRANTED**, and Plaintiff's claims should be **DISMISSED**.

## CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that TransUnion's Motion to Dismiss (Dkt. No. 22) should be **GRANTED**, and that Plaintiff's claims should be **DISMISSED**.[7]

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

October 8, 2026
Charleston, South Carolina

7 The undersigned further notes that Plaintiff has already been afforded an opportunity to amend his complaint and it does not appear that further amendment would cure many of the deficiencies outlined above.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).